EVANS *et al.* v. THE INTERSTATE RAPID TRANSIT
RAILWAY COMPANY, *Appellant.*

### DIVISION ONE.

1. **Railroads:** NEGLIGENCE : INSTRUCTION.   A trial court should not give instructions on a matter of negligence when there is no evidence to support them.

2. ———: CONSOLIDATION : ABATEMENT.   The consolidation of a corporation with another does not abate a suit pending at the time of such consolidation.

*Appeal from Clay Circuit Court.*—HON. J. M. SANDUSKY, Judge.

REVERSED AND REMANDED.

*Warner, Dean & Hagerman* for appellant.

(1)   Upon the consolidation of the defendant company with the "Kansas City & Wyandotte Railway & Tunnel Company," "The Riverview Railway Company" and "The Brighton & Chelsea Park Railway Company," the defendant railway company, ceased to exist as a corporation, its power to sue and capacity to be sued by that name was extinguished, and a new corporation was created.   And upon the suggestion and proof of consolidation of the defendant railway company with the above-named railway companies, this action, which had been commenced against such company before its consolidation, should have been abated. *State ex rel. v. Railroad*, 99 Mo. 30, and cases cited ; *Railroad v. Smith*, 40 Kan. 192; *Railroad v. Fryer*, 11 Am. & Eng. R. R. Cases (Texas) 325.   (2)   Upon the suggestion and proof of consolidation of the defendant railway company with the other railway companies, the

Evans v. The Interstate Rapid Transit Ry. Co.

cause then stood without a defendant, and the court was, therefore, without jurisdiction to proceed further with the cause, and the judgment rendered was void. See cases just above cited, especially those from Texas and Kansas. (3) Plaintiff's instruction, numbered 1, is erroneous in this: *First*. It is an abstract proposition of law, not bearing on the only act of negligence, if any, which caused the accident, namely, the moving of the train before deceased got on it. *Second*. It is clearly misleading in that it called the attention of the jury away from the act of negligence, if any, which was the proximate cause of the injury. *Third*. It makes the defendant the insurer of the safety of the structure, when the law only requires that the defendant exercise either ordinary care or the highest degree of care in maintaining the structure in a reasonably safe condition. *Lemon v. Chanslor*, 68 Mo. 341; *Hipsley v. Railroad*, 88 Mo. 353; *Waller v. Railroad*, 83 Mo. 608; *Railroad v. Love*, 10 Ind. 554; *Railroad v. Froesch*, 68 Ill. 551; Hutchinson on Carriers, secs. 498–501, inclusive. (4) Plaintiff's instruction, numbered 2, was erroneous. (5) Plaintiff's third instruction is illogical and misleading. (6) Plaintiff's instruction, numbered 5, is erroneous. (7) The court should have given instruction, numbered 1, asked by defendant, because of the suggestion and proof of the consolidation of the defendant with other companies. (8) Boarding the train in question by the deceased, the same being on an elevated structure and a rapid transit railway, while in motion, was an act of contributory negligence on the part of the deceased, so as to preclude a recovery in this case, and the court should have given defendant's instruction, numbered 4. *Solomon v. Railroad*, 104 N. Y. 437; *Harvey v. Railroad*, 116 Mass. 269; *Weber v. Cable Co.*, 100 Mo. 194; *Railroad v. Scates*, 9 Cent. Law Jour. (Sup. Ct. Ill.) 167–9; *Nelson v. Railroad*, 68 Mo. 593; Hutchinson on Carriers, sec. 641, p. 505, and cases cited; Thompson's Carriers of

Passengers, 266–8, and cases cited; *Railroad v. Jones*, 95 U. S. 439. (9) Instruction, numbered 9, asked by the defendant, should have been given, because the record shows that there was no evidence in the case tending to show that the railway in question was improperly or negligently constructed.

*John W. Beebe, Gates & Wallace* and *H. F. Simrall* for respondents.

(1) The court did not err in overruling the defendant's motion to abate the suit. *First.* There was a failure to prove a legal consolidation. Articles of Consolidation, art. 9, p. 19; R. S., sec. 2567. *Second.* A consolidation effected after the institution of a suit against one of combining companies does not abate the action. 3 Wood on Railways, p. 1683; Wait on Insolv. Corp., sec. 448, p. 382; *Railroad v. Musselman*, 2 Grant's Cases (Pa.) 348; *Railroad v. Evans*, 6 Heisk. 607; *Shackleford v. Railroad*, 52 Miss. 159; *Whipple v. Railroad*, 28 Kan. 474; *Railroad v. Hardin*, 40 Ga. 706; *Refining Co. v. Gillett*, 31 Fed. Rep. 809. *Third.* By answering to the merits and by its subsequent conduct, including the prosecution of this appeal, the defendant waived its plea, and is estopped from denying its corporate existence. *Railroad v. Evans*, 6 Heisk. 607; 2 Herman on Estoppel, secs. 819–1187; Bigleow on Estoppel [5 Ed.] 673; *Seaton v. C. R. & P.* 55 Mo. 416; *Witthouse v. Railroad*, 64 Mo. 523; *Smith v. Railroad*, 153 Mo. 526; *Tower v. Moore*, 52 Mo. 118; *Reppsiein v. Ins. Co.*, 57 Mo. 86; *Moody v. Deutch*, 85 Mo. 237; *Brown v. Bowen*, 90 Mo. 184; *Hudson v. Railroad*, 101 Mo. 13. *Fourth.* Nor is the defendant in a position to take advantage of the supposed error of the court in overruling its plea, as such alleged error was not noticed in the motion for a new trial. *Acock v. Acock*, 57 Mo. 154; *Welheull v. Harris*, 51 Mo. 65; *Rotchford v. Creamer*, 65 Mo. 48;

*Cravens v. Gillilan,* 73 Mo. 524. (2) The court did not err in overruling defendant's demurrer to the evidence. The case for plaintiff disclosed gross negligence on the part of defendant, and entire freedom of contributory negligence on the part of the deceased. See authorities next point. (3) The plaintiff's instructions correctly declared the law of the case. Hutchinson on Carriers, sec. 516, *et seq.,* p. 417; Whitaker's Smith on Negligence, 311–319, and notes of cases; *Curtis v. Railroad,* 27 Wis. 158; *Railroad v. Wilson,* 63 Ill. 167; *Neir v. Railroad,* 64 Pa. St. 225; *Swigert v. Railroad,* 75 Mo. 475; *Leslie v. Railroad,* 88 Mo. 56; *Stager v. Railroad,* 119 Pa. St. 70; *McDonough v. Railroad,* 137 Mass. 210. (4) The defendant was not entitled to the fourth instruction asked by it and refused. It is not necessarily contributory negligence for a passenger to board a train while in motion. Patterson, Railroad Accident Law, p. 264, and numerous cases there cited; *Swigert v. Railroad,* 75 Mo. 190; *Leslie v. Railroad,* 88 Mo. 56; *Strauss v. Railroad,* 75 Mo. 190. *First.* Nor is the defendant in a position to complain of its refusal, as the said instruction is not within the series of refused instructions noticed in the motion for a new trial. *State v. Nelson,* 101 Mo. 477. *Second.* Besides, the defendant asked instructions which were given, submitting the question to the jury whether the act of deceased in boarding the train (if in motion) was negligent. "A party will not be heard to complain of instructions given which are similar to those asked by him." *Whitmore v. Supreme Lodge,* 100 Mo. 36. (5) The criticism of plaintiff's instruction, numbered 1, is untenable. The defective condition of the platform was a contributive cause of the injury, a cause, without which death would probably not have occurred. It is to be read in connection with instruction, numbered 3, given on behalf of plaintiff.

BLACK, J.—The plaintiff, as the widow of John Evans, brought this suit to recover damages for the death of her husband, who was killed while attempting to get on one of defendant's trains at State Line station. To the east and west of this station the defendant's road is an elevated steam railroad. The cars are reached by a stairway leading up from the sidewalk to a small station house constructed on a platform which is on a level with the railroad track, the track being twenty-five feet above the surface of the street. The platform extends out four and one-half feet from the house, and has a railing around the outer edge. Passengers in reaching the cars pass into the house and thence through the same and out at an opening, nine feet wide, to the platform. The railing begins at the house on each side of this opening and extends out four and one-half feet, and then turns to the right and left, forming an open space. When the cars stop, the rear platform on the front coach and the front platform on the rear coach stand in front of this open space. At the time of the accident the railing extending to the right and left was twelve inches from the cars.

The petition states in substance, *first*, that the railing was unsafe and dangerous to persons getting on and off trains by reason of their being subject to the peril of being caught and carried along between the railing and cars; *second*, that the servants in charge of the train negligently failed to stop and hold the train for a sufficient length of time to allow the deceased to get on, and that because of such negligence he was forced between the railing and cars and thrown down to the street below and killed.

The further evidence upon the first alleged ground of recovery shows that the station house was not completed at the time of the accident, the doors and windows not having yet been put in place. A few weeks thereafter the defendant placed an additional plank or

post at the corners where the railing turns to the right and left, thus reducing the space between the railing and cars at those points from twelve to six inches.

The plaintiff's evidence on the other issue is to the following effect: The train in question was going east, and deceased was a passenger on it. When it reached the station in question he got off at the front platform on the rear car. He then saw Mr. Finley, his son-in-law, who was in the act of getting on the same train at the other car platform. Evans spoke to Finley, and the latter said, "I am going up town." Evans said, "I believe I will go, too." The further evidence of Finley is, that he stepped on one coach platform and Evans got on the first step to the platform of the other coach; that the conductor started the cars so quickly that he had to throw himself around on the platform of the car; that Evans was advanced in years, slow of motion and a little lame in one leg, and was carried along and forced in between the railing and cars, and at the end of the railing fell down to the street below; that during this time the conductor was standing on one car platform; that there were gates on these car platforms, which were closed when the cars were in motion and opened at the stations; that the gates were open when he and Evans got on the car platform steps; and that the cars were not then in motion. For the defendant, the conductor testified that at the time the train started the deceased was standing on the station platform, two or three feet from the cars with his back partly towards the train; that Evans made a grab for the cars after they had started and swung against the railing.

1. There is evidence to support the averment of negligence on the part of defendant in not holding the train a sufficient time to allow the deceased to get on in safety, and there is also evidence to support the plea of contributory negligence on the part of the deceased. The case made was one for the jury on these issues. But the court did not stop here. The first instruction

given at the request of the plaintiff told the jury that it was the duty of defendant to maintain a reasonably safe structure for the use of the public in getting on and off the cars at this station; the third asserts the proposition that, in determining whether the train was held for a time reasonably sufficient to enable the deceased to get on, the jury had the right to consider whether the railing was reasonably safe; and the same proposition is put forth in the fifth instruction. On the other hand, the court refused defendant's instruction to the effect that there was no evidence tending to show that the railing around the depot was improperly or negligently constructed. Whether the railing was safe or negligently constructed was, it will be seen, made an important issue, as the case was submitted to the jury, and the question arises whether the court erred in giving these instructions.

There can be no doubt but a railing was necessary to guard against accidents. We do not understand counsel for plaintiff to question this proposition. Indeed, the company found it necessary to increase the height of the railing leading from each side of the door out to the cars to keep people from jumping over. At the time of the accident the railing was strong, and the only evidence of any defect is the fact that the defendant some three or more weeks after the accident decreased the space between the railing and cars from twelve to six inches by placing a plank or additional post at the corners where the railing turns to the right and left. The evidence of the engineer who constructed the road and depot shows that this post was put in for the sole purpose of giving strength to the railing. It is clear that no man of reason possessed of even a low degree of prudence would of his own volition go in between this railing and the cars as the space existed at the date of the accident. But, for whatever purpose this new post was added, it was perfectly manifest that the want of it had no agency in causing the death of

Mr. Evans. Had the post been there at that time, it could be argued that its presence increased the danger with as much plausibility as it is now argued that the want of it contributed to the death of Mr. Evans ; for with the post in place there would be less room for the body to pass when carried along by the cars.

This station house is twenty-five feet above the ground, and the railing was necessary for the protection of persons going to and from the cars, and there is no evidence that the railing was defective.   Moreover, the want of the post did not cause the accident, or even lend a contributing hand. If the defendant was at fault, it is because the conductor did not hold his train long enough to enable the deceased to get on board.   It is, therefore, clear that the court erred in giving plaintiff's first, third and fifth instructions ; for there was no evidence upon which to base them, and they introduced a ground of recovery not supported by any evidence.

2.   Some two or three months after this suit had been commenced and service had, the defendant and three other railroads, all forming a continuous line, were consolidated under the laws of this state and the state of Kansas, the name of the new corporation being "The Interstate Consolidated Rapid Transit Railway Company."   On the trial the attorneys for defendant suggested and made proof of the consolidation and moved for an order that the suit abate, which motion was overruled, and this ruling is assigned as error.   By the statute law of this state the consolidated company has all the powers, rights and privileges, and is subject to all the obligations and liabilities to the state, " or otherwise," which belonged to or rested upon either of the companies making the consolidation.   R. S. 1879, sec. 2567.   Whether a consolidation of two or more companies works an immediate dissolution of the old companies, depends upon the statute authorizing the consolidation. *State ex rel. v. Railroad*, 99 Mo. 30, and cases cited.   Ordinarily the effect of a consolidation of

two or more companies into one is a dissolution of all of them and the creation of a new company.   But legal proceedings properly commenced against a corporation are not affected by the expiration of the charter before the determination of such proceeding.   *Lindell v. Benton & Kennerly*, 6 Mo. 361.   So where one corporation is consolidated with another while a suit is pending against it, the suit does not abate.   *Railroad v. Musselman*, 2 Grant's Cases, 348; *Railroad v. Evans*, 6 Heisk. 607; *Shackleford v. Railroad*, 52 Miss. 159; Wood on Railway Law, p. 1683; Wait on Insolvent Corporations, sec. 448.

*Railroad v. Fryer*, 11 Am. & Eng. R. R. Cases, 325, is not opposed to the cases before cited, for in that case the suit was not commenced until after the consolidation had been perfected.   Nor does *State ex rel. v. Railroad, supra*, give any support to the proposition that a pending suit against a corporation abates by the consolidation of the defendant with some other corporation.   This suit did not, therefore, abate.

For the reasons before stated the judgment is reversed and the cause remanded. BARCLAY, J., absent, the other judges concur.